UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



Ilya Vett,

                              Plaintiff,

        -against-

City of New York, et al.

                              Defendants.

No. 20-cv-2945

**DECISION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS**

Plaintiff Ilya Vett was arrested – allegedly without probable cause – and was the subject of a criminal action that was ultimately dismissed. He brings this six-count action against the City of New York (the "City") and its police department (the "NYPD"), as well as a number of named and unnamed police officers, seeking damages for the alleged deprivation of his civil rights pursuant to 42 U.S.C. § 1983. Vett also asserts various state law claims arising out of the same incident.

The motion is granted in part and denied in part.

## BACKGROUND

For 17 years, Ilya Vett worked in the puppet department of the famous Broadway play *The Lion King*. He was fired from the production in 2018, after he was arrested and charged with unlawful attempted possession of a firearm. Vett was arrested while printing, on a 3-D printer at his place of work (the prop room at the Minskoff Theater), a part that he claims could only be used in an inoperable prop gun.

The principal issue raised by Defendants' motion is whether the police had probable cause to arrest Plaintiff. Plaintiff maintains that as he was merely printing a *part* of what would

ultimately be an *inoperable* prop gun, there was no probable cause to arrest him for committing any crime or administrative violation.  Defendants disagree.

The relevant factual allegations contained in the Complaint are summarized as follows.

*A.  Parties*

Plaintiff Ilya Vett, a resident of New York City, was employed for 17 years by *The Lion King* on Broadway.  Compl. ¶ 15.  He worked in the puppet department, where he was tasked with maintaining the large "cast" of puppets for the award-winning musical.  *Id.*  Plaintiff also worked as a vendor for Disney Theatrical and its affiliates and subsidiaries. Compl. ¶ 16.

The Individual Defendants are police officers James Taylor ("Officer Taylor"), Nelson Tejada ("Officer Tejada"), and Nicholas Mauceli ("Officer Mauceli"); Police Sergeant James Kelly ("Sergeant Kelly"); Police Detective James Schick ("Detective Schick"); and NYPD employees John Does 1-5. The Individual Defendants were duly appointed and acting NYPD officers at all times relevant to the Complaint.

Plaintiff has also named City of New York (the City) and the NYPD as defendants in this action.

*B.  Relevant Facts*

The Court takes the facts as pleaded in the Complaint and views them most favorably to Plaintiff.

i.   <u>The Arrest and Prosecution of Plaintiff.</u>

Plaintiff Ilya Vett was arrested on September 21, 2018, shortly after arriving at his job at the Minskoff Theater, home to *The Lion King on Broadway*.  Officer Taylor came into the prop room at the Minskoff, where he observed a portion of a 3-D printed revolver that was in the process of being printed.  Compl. ¶ 17.  The Complaint pleads no facts about how or why the officer was

in the prop room at the Minskoff; for example, the Complaint does not allege that Vett's employer called the police, which is the logical conclusion that a reader would otherwise draw. Vett also does not plead anything about the need for prop guns in *The Lion King*; I saw the play many years ago, but as far as I recall, the play makes no use of any gun (this is not *Bambi*; all the characters are animals, and the significant mid-show death is caused by a stampede, not a hunter).

Officer Taylor, Officer Tejada, and Officer Mauceli (together, the "Arresting Officers") arrested Plaintiff for attempted criminal possession of a firearm, in violation of New York Penal Law 110/265.01-b(1).[1]

According to Plaintiff, it should have been obvious that he was printing a prop gun – one that, even when completed, could never be modified into an operable firearm that was capable of discharging ammunition. Compl. ¶ 18.[2] Nonetheless, Sergeant Kelly approved Plaintiff's arrest. *Id.*

Plaintiff was taken down to the Midtown South Precinct, where he was interviewed by Detective Schick. Plaintiff alleges that he explained to Detective Schick that he was only printing one part for a prop gun, and that even the completed prop gun could not be modified into a firearm. Compl. ¶ 19. He further advised Detective Schick that the description of the plans for the prop gun, which he had obtained from a publicly-available web site (Compl. ¶ 20), explicitly states,

---

[1] Pursuant Section 265.01-b (entitled "Criminal possession of a firearm"), "A person is guilty of criminal possession of a firearm when he or she: (1) possesses any firearm or; (2) lawfully possesses a firearm prior to the effective date of the chapter of the laws of two thousand thirteen which added this section subject to the registration requirements of subdivision sixteen-a of section 400.00 of this chapter and knowingly fails to register such firearm pursuant to such subdivision." N.Y. P.L. § 265.01-b(1). And under N.Y. Penal Law § 110.00, "A person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime."

[2] As we have recently learned to our sorrow, not all "prop" guns are inoperable. *See, e.g., How the Shooting on the Alec Baldwin Set Happened*, The New York Times, (Oct. 30, 2021), https://www.nytimes.com/2021/10/30/movies/alec-baldwin-rust-shooting-timeline.html.

" [the prop] is completely non-functioning, and it is impossible to make the black object do anything other than just be a prop." *Id.* Vett told Detective Schick that he was fully aware of the fact that the prop gun could never be capable of firing ammunition; the plans prominently displayed a disclaimer on the first page that read "ATTENTION! This is not a real gun! It cannot shoot and it was never meant to do so! There is no firing pin and the space where it would theoretically be is needed for my internal mechanics anyway." *Id.* Detective Schick allegedly acknowledged during the interview that the plastic piece was part of "a prop of a firearm." *Id.*

Notwithstanding the foregoing, Officer Taylor (one of the Arresting Officers) signed a criminal complaint charging Plaintiff with attempted criminal possession of a firearm, for possessing "a hard plastic object." Compl. ¶ 22. The criminal complaint included statements Plaintiff purportedly made during his interview with Detective Schick, but omitted the statements that are discussed in the preceding paragraph. The criminal complaint did not mention Plaintiff's representation that neither the printed part nor any completed prop gun that was printed from the plans he had obtained could ever be modified into an operable firearm capable of discharging ammunition. *Id.* Detective Schick signed a supporting deposition attesting to the fact that everything stated in the criminal complaint was true. Compl. ¶ 31.

Plaintiff was arraigned on September 22, 2018. His case was adjourned to November 7, 2018. I note that Plaintiff does not plead that he was either admitted to or denied bail, so I have no idea whether he was released after arraignment, though I suspect he was. This means I do not know when Plaintiff ceased to be "in custody" – the consequences of which will be discussed below.

On September 25, 2018, the NYPD completed its examination of the confiscated part. Plaintiff alleges that final report concluded that the confiscated part "is not capable of discharging

a live cartridge and is therefore NOT A FIREARM." Compl. ¶ 32.[3] Nonetheless, the charge pending against Plaintiff was not dropped. Instead, on October 5, 2018, Assistant District Attorney Matthew Sears filed a "certificate of readiness" declaring that the government was ready to proceed to trial. Compl. ¶ 33.

Plaintiff appeared in court on November 7, 2018, at which time his case was once again adjourned, this time to January 14, 2019. Plaintiff appeared again on January 14, and his case was adjourned once more, until March 7, 2019. When Plaintiff appeared in court on March 7, the charge against him was dismissed, and his case was sealed. Plaintiff alleges that the case was dropped "because he was innocent of attempting to possess any firearm" in violation of New York law. Compl. ¶ 35. I have no way of knowing, based on the allegations of the pleading, whether the case was dropped by the People or dismissed by the judge, either on the merits or for some technical reason.

     ii.   <u>The Resulting Damage to Plaintiff's Livelihood and Reputation</u>

Immediately following his arrest, Plaintiff was fired from his job with *The Lion King*. Compl. ¶ 25. Plaintiff alleges that he was fired because he was arrested – rather than, say, because he was using his employer's premises to print a phony firearm that was not needed for the show on which he was working and was not part of his job duties.

Plaintiff further contends that his job loss was compounded by a "publicity blitz" undertaken by the NYPD, which caused major newspapers (The New York Times, The New York Post, The Washington Post, and The New York Daily News) to publish articles about Plaintiff's arrest. Compl. ¶ 26. In addition to the written coverage, television networks like Fox News and WPIX (Channel 11) also covered Plaintiff's arrest. *Id.* These public reports (which Plaintiff refers

---

[3] The capitalization appears in the complaint; whether it appears in the original is not pleaded, since the report is not appended to the complaint.

to as a "smear" campaign) caused Plaintiff to suffer embarrassment, emotional distress, and financial hardship. He contends that he has not been able to find work on any other Broadway show, despite his expertise and 17 years of experience. Compl. ¶ 30.

   *C. Defendants' Motion to Dismiss*

   Defendants have moved to dismiss portions of the Complaint ("Mot."). *See* Docket No. 21. Plaintiff filed a memorandum of law in opposition to Defendants' motion ("Opp."). *See* Docket No. 28. Defendants did not file a reply brief.

   Defendant NYPD moves to dismiss the Complaint as against it in its entirety, because the NYPD is an agency of the City and is therefore not a suable entity. Mot. at 4 (citing *Jenkins v. City of N.Y.*, 478 F.3d 76, 93 n.19 (2d Cir. 2007)). Plaintiff does not oppose Defendants' motion as to the NYPD, and it is meritorious. Accordingly, the NYPD is dismissed with prejudice as a named defendant on all counts.

   The City and the Individual Defendants also move to dismiss the following counts, either entirely or in part as against certain of the Defendants. Plaintiff does not oppose most of Defendants' motion, which significantly reduces the number of issues the Court must decide.

   **Count 1**: Count 1 is a state law claim for false arrest asserted against all Defendants. All Defendants move to dismiss the state law false arrest claim because Plaintiff failed to file a notice of claim within ninety days after he was released from custody following his arrest, pursuant to N.Y. Gen. Mun. law §50-e and 50-i(1). They assert in their motion that Plaintiff did not serve his notice of claim until May 31, 2019. Plaintiff does not dispute the date when he filed his notice of claim, but, as noted above, the Court does not know when Plaintiff was released from custody following his arrest. I thus cannot dismiss Count 1 as against any Defendant.

However, Plaintiff does not oppose this aspect of Defendants' motion, which suggests that he was released from custody more than 90 days prior to May 31, 2019. I will give any party leave to supplement the record to provide me the date on which Plaintiff was released from custody (on bail or otherwise) following his arrest and arraignment. If it proves to be more than 90 days prior to the date on which the notice of claim was filed, I will enter a supplemental order dismissing Count 1 in its entirety and with prejudice.

**Count 2**: Count 2 is a state law claim for malicious prosecution against all Defendants. Defendants move to dismiss as to all Defendants except for Defendants Officer Taylor (who signed the criminal complaint) and Detective Schick (who conducted the interview that served as part of the basis for the criminal complaint and a signed a supporting affidavit attesting to the truth of the contents of the criminal complaint).

Because the notice of claim was filed within 90 days of March 7, 2019 – the date on which the criminal charge against Plaintiff was dismissed – the moving Defendants do not assert that it should be dismissed for failure to file a timely notice of claim.

Plaintiff does not oppose the motion, and no facts are pleaded in the Complaint that would render any of the rest of the Defendants liable to Vett under any conceivable theory of malicious prosecution. Accordingly, Count 2 is dismissed as to Defendants Officer Tejada, Officer Mauceli, Sergeant Kelly, and John Does 1-5. Plaintiff has not asked that this claim be dismissed without prejudice, so it is dismissed with prejudice.

Because this state law claim survives against two Defendants, the doctrine of *respondeat superior* applies,[4] and Count 2 is not dismissed as against the City of New York.

---

[4] Under New York state law, a municipality may be held vicariously liable on state law claims asserted against individual officers under a theory of *respondeat superior. Linson v. City of New York*, 98 A.D.3d 1002, 1003 (N.Y. App. Div. 2012); *see also Bektic-Marrero v. Goldberg*, 850 F. Supp. 2d 418, 434 (S.D.N.Y. 2012) (state law

**Count 3:** Count 3 is a state law claim for negligent hiring, training, and supervision asserted against the City of New York. The City moves to dismiss Count 3 for failure to state a claim; Plaintiff does not oppose the motion.

Plaintiff has not asked that this claim be dismissed without prejudice, so Count 3 is dismissed with prejudice.

**Count 4:** Count 4 consists of a series of five different claims arising under 42 U.S.C. Section 1983, which are asserted against all Defendants. These improperly amalgamated claims include (i) malicious prosecution; (ii) wrongful arrest and detention; (iii) manufacturing of evidence, (iv) denial of a fair trial, and (v) deprivation of liberty under the Fourth Fifth, Sixth and Fourteenth Amendments.

To avoid confusion, the Court has divided Count 4 into 5 sub-claims, Count 4(i)-(v), outlined and discussed below.

I note that all Defendants, including the City of New York, are named in every sub-claim of Count 4. But as the City cannot be held liable on a *respondeat superior* theory when the claim arises under Section 1983, Count 4 is dismissed with prejudice as against the City because it is duplicative of Plaintiff's *Monell* claim against the City (Count 5).

---

claims against municipality survive under the doctrine of *respondeat superior* even though parallel federal claims are dismissed).

| Count 4 sub-claim | Named Defendants | Defendants move to dismiss as to: | Plaintiff opposes or does not oppose: | Dismissed: | Surviving: |
|---|---|---|---|---|---|
| 4(i) Malicious prosecution | All Defendants | All Defendants except Officer Taylor and Detective Schick | Plaintiff does not oppose | 4(i) dismissed as to all other Individual Defendants without prejudice and as to the City with prejudice. | As against Officer Taylor and Detective Schick |
| 4(ii) False Arrest | All Defendants | All Defendants or, alternatively, Sergeant Kelly and Detective Schick | Plaintiff does not oppose dismissal as to Detective Schick, but otherwise opposes. | 4(ii) is dismissed as to Detective Schick and as to the City. | As to all other Individual Defendants, including Sergeant Kelly |
| 4(iii) Evidence Manufacturing | All Defendants | All Defendants except Officer Taylor and Detective Schick | Plaintiff does not Oppose | 4(iii) is dismissed as to all other Individual Defendants, without prejudice and as to the City with prejudice. | As against Officer Taylor and Detective Schick |
| 4(iv) Denial of a Fair Trial | All Defendants | Defendants have not moved to dismiss 4(iv). | N/A | 4(iv) is dismissed with prejudice as to the City. | 4(iv) survives against all Individual Defendants. |
| 4(v) Deprivation of Liberty | All Defendants | Defendants have not moved to dismiss 4(v). | N/A | 4(v) is dismissed with prejudice as to the City. | 4(v) survives against all Individual Defendants. |

**4(i)**: Defendants move to dismiss Count 4(i), Section 1983 Malicious Prosecution, as against all Defendants except Officer Taylor and Detective Schick, on the ground that the Complaint fails to allege how the remaining Individual Defendants personally participated in Plaintiff's arrest. Plaintiff does not oppose, but asks that the Court dismiss Count 4(i) as to the Individual Defendants without prejudice. I note that Plaintiffs made no such request when failing to oppose the state law malicious prosecution claim, which I have accordingly dismissed with prejudice.

Plaintiff's Section 1983 malicious prosecution claim is dismissed as against Officers Tejada and Mauceli, and Sergeant Kelly, without prejudice. Plaintiff has 21 days to file an amended complaint in which he pleads facts tending to show that these officers did something that would qualify as participating in a malicious prosecution. If he fails to do so, this claim, like its state law counterpart, will be dismissed with prejudice as to these three officers.

**4(ii)**: Defendants move to dismiss Count 4(ii) False Arrest for failure to state a claim. They assert that the Arresting Officers had probable cause to arrest Plaintiff, and that Sergeant Kelly and Detective Schick did not arrest the Plaintiff.

The claim is dismissed as against Detective Schick without opposition and with prejudice because no facts are alleged that would tend to show that he participated in Plaintiff's arrest (as opposed to the subsequent prosecution, in which he did participate, by filing a supporting declaration). But the claim is not dismissed as against any of Arresting Officers, because on the allegations of the Complaint it is not possible to conclude that they either had or lacked probable cause to arrest Plaintiff. And the claim is not dismissed as against Sergeant Kelly either; it is also not possible to conclude that Sergeant Kelly had arguable probable cause to approve Plaintiff's arrest based solely on the pleading. The reasoning behind these decisions will be discussed more extensively below.

**4(iii)**: Defendants move to dismiss Count 4(iii), Section 1983 "Manufacturing of Evidence," as against Officer Tejada, Officer Mauceli, and Sergeant Kelly for failure to state a claim. Plaintiff does not oppose but again asks that this claim be dismissed against the moving officers without prejudice. Again, I will dismiss without prejudice, but Plaintiff has 21 days to plead facts tending to show that any or every one of these officers allegedly did something that

constituted manufacturing of evidence. Otherwise, the claim will be dismissed with prejudice as against them.

**Count 5**: Count 5 is a Section 1983 *Monell*-type claim against the City of New York; it alleges that the above-pleaded violations of Vett's civil rights were occasioned by the NYPD's policies, practices, and procedures. Defendants move to dismiss for failure to state a claim. Plaintiff does not oppose but asks the Court to dismiss Count 5 without prejudice. Accordingly, Count 5 is dismissed without prejudice as to the City of New York (it has already been dismissed with prejudice as against the NYPD). Plaintiff has 21 days to file an amended complaint pleading facts tending to show why the City could possibly be held liable to Plaintiff pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978) on the unique facts of this case.

**Count 6**: Count 6 is a state law claim for intentional infliction of emotional distress against all Defendants. Defendants move to dismiss for failure to state a claim and Plaintiff does not oppose. Plaintiff does not come close to pleading a viable IIED claim – a claim that is highly disfavored under state law – and so it is dismissed as against all Defendants with prejudice.

## DISCUSSION

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Such facial plausibility requires plaintiffs to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Where plaintiffs fail to "nudge[] their claims across the line from conceivable to plausible," their complaint must be dismissed." *Twombly*, 550 U.S. at 570.

Federal Rule 12(b)(6) "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of" the truth of the allegations. *Id.* at 545.[5]

## I. Plaintiff's Section 1983 False Arrest Claim

Pursuant to 42 U.S.C. § 1983, a civil plaintiff may bring an action for a violation of his constitutional rights.

A claim for false arrest under § 1983 incorporates the elements of a false arrest claim under state law. *Boyd v. City of New York*, 336 F.3d 72, 75 (2d Cir. 2003). To establish a false arrest claim under New York law, Plaintiff must sufficiently plead facts to allege that: (1) Defendants intended to confine Plaintiff; (2) Plaintiff was conscious of the confinement; (3) Plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. *See Liranzo v. United States*, 690 F.3d 78, 95 (2d Cir. 2012).

Defendants first moved to dismiss Count 4(ii) in its entirety on the grounds that Plaintiff did not and cannot state a claim for false arrest because his arrest was privileged as it was supported by probable cause. Alternatively, Plaintiffs move to dismiss Count 4(ii) at least as against Sergeant Kelly, the officer who approved Plaintiff's arrest, but who was not present on the scene.

### A. The Arresting Officers' Motion to Dismiss is Denied.

First, Defendants challenge the sufficiency of the pleadings as to the fourth element of false arrest. They argue that the Arresting Officers had probable cause to arrest Plaintiff.

---

[5] It is for this reason that I am requiring Plaintiff to file an amended complaint within 21 days alleging facts on certain dismissed claims, or against certain dismissed Defendants, that would at the very least give rise to a reasonable expectation that discovery would reveal evidence of the truth of those allegations. Right now, the pleading contains no such factual allegations, and I will not allow this case to go forward in the hope that a fishing expedition will reveal some reason to sue those Defendants on those counts.

An arrest is privileged if it is based on probable cause. *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007) ("The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest"); *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) ("probable cause ... is a complete defense to an action for false arrest"). Defendants move to dismiss Plaintiff's claim for false arrest under federal law on the ground that Plaintiff's arrest was privileged because it was supported by probable cause.

"Probable cause to arrest exists under federal law 'when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.'" *Smith v. Edwards*, 175 F.3d 99, 106 (2d Cir.1999) (quoting *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir.1991)). "An arresting officer has probable cause when the officer has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" *Simpson v. City of New York*, 793 F.3d 259, 265 (2d Cir. 2015) (quoting *Weyant*, 101 F.3d at 852).

The existence of probable cause is an affirmative defense, which is normally asserted by a defendant in his answer to the complaint.

But "courts may grant a pre-answer motion to dismiss on the basis of an affirmative defense where such defense appears on the face of the complaint." *Silver v. Kuehbeck*, 217 F. App'x 18, 22 (2d Cir. 2007); *Singer v. Fulton County Sheriff*, 63 F.3d 110, 119 (2d Cir.1995) (probable cause as an affirmative defense may be demonstrated by facts admitted in the complaint). In *Silver*, for example, the Second Circuit reviewed the grant of a motion to dismiss a false arrest claim *de novo* and found that the complaint "on its face support[ed] a finding" that the officer had probable cause

to arrest the plaintiff because the "undisputed facts clearly establish[ed] the elements of aggravated harassment," the crime for which the plaintiff had been arrested. *Silver*, 217 F. App'x at 22.

Defendants argue that the Arresting Officers had probable cause to arrest Plaintiff for a crime – albeit not necessarily for the crime with which he was charged. Defendants argue that, based on the facts as alleged in the Complaint, the Arresting Officers had probable cause to arrest Plaintiff for possession of an *imitation* pistol in violation of New York City Administrative Code 10-131(g)(1). As the reader already knows, Plaintiff was actually charged with criminal possession of a firearm, not with unlawful possession of an imitation pistol.

But the Court agrees with Defendants that the viability of Plaintiff's Section 1983 false arrest claim depends on whether probable cause existed to arrest him for *any* crime, not whether probable cause existed to arrest him for the crime ultimately charged. *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006).

Accordingly, if the facts alleged in the Complaint sufficiently demonstrate that the Arresting Officers had probable cause to arrest Plaintiff for possessing an imitation pistol, then Plaintiff does not and cannot state a Section 1983 claim for false arrest. For the purpose of deciding this motion, the Court assumes that the arresting officer Defendants knew only what the Complaint states they saw or heard about the conduct at issue.

Defendants say that the Arresting Officers (Taylor, Tejada and Mauceli) had probable cause to arrest Plaintiff for a violation of Section 10-131(g)(1) of the NYC Administrative Code, which provides: "It shall be unlawful for any person to sell or offer for sell, possess or use or attempt to use or give away any toy or imitation firearm which substantially duplicates or can reasonably be perceived to be an actual firearm." Admin. Code § 10-131(g)(1). Defendants argue that charges have been upheld for criminal possession of an imitation firearm "when, for example

a defendant was found in possession of an inoperable BB gun that 'substantially duplicated' a real firearm," as was the case in *Matter of Tilar M.*, 969 N.Y.S. 2d 806 (N.Y. Fam. Ct. 2013).

But Plaintiff does not plead that the Arresting Officers found him in possession of an inoperable gun that substantially duplicated a real gun. On the contrary, the Complaint alleges that Officer Taylor arrived at the prop room in the Minskoff Theater and "seized a *small part* of a 3D printed plastic prop of a revolver . ... that was in the process of printing." Compl. ¶ 17 (emphasis added).

Based on the facts as alleged in the Complaint, the Arresting Officers had no reason to suspect that Plaintiff was in possession of an imitation firearm that *substantially* duplicated or *could reasonably be perceived to be* an actual firearm. Plaintiff was in the process of printing only part of the prop gun (Compl. ¶17); it is not the case that the Arresting Officers observed Plaintiff printing a complete imitation firearm, or anything that substantially duplicated or could reasonably be perceived to be an operable firearm – a gun.

Defendants point out that, while Section 10-131(g) provides an exception to the violation for "any toy or imitation firearm that will be used only for or in the production of television programs or theatrical or motion picture presentations. . .." Admin. Code § 10-131(2)(b), the exception cannot be invoked in this case, because "even though plaintiff was employed by a theatrical company, he does not allege that he intended to use the gun in any theatrical" production. Mot. at 10.

Defendants are correct that Plaintiff has not pleaded facts tending to show that his conduct would fall within the exception to the violation; indeed, as noted above, Plaintiff does not allege that he was printing a prop gun to be used in *The Lion King* (most likely because he cannot).

15

But this is of no moment. Plaintiff is not seeking to take advantage of any exception to the Administrative Code. The issue is whether the officers had probable cause to arrest Plaintiff, based solely on the facts as plead in the Complaint. All that Plaintiff alleges in his Complaint that the Arresting Officers arrived at Plaintiff's place of work – the theater prop room where Plaintiff created props for the Broadway production – and found him in the process of printing one part for something that might eventually, when and if completed, resemble a real gun.

There is obviously more to the story here; a great deal of relevant information was left out of Plaintiff's complaint. I suspect that was deliberate; the Complaint in this case strongly smells of what is known as "artful pleading." Artful pleading is, as is well known, disfavored; indeed, "Insubstantial lawsuits can be quickly terminated by federal courts alert to the possibilities of artful pleading." *Harlow v. Fitzgerald*, 457 U.S. 800, 808 (1981). It may be that, based on the circumstances leading up to the arrest or on credible information available to the Arresting Officers at that time, probable cause did exist to arrest Plaintiff – but those facts were omitted from the Complaint.

But at this juncture, I am limited to the pleaded facts. I cannot conclude that probable cause is demonstrated on the face of Plaintiff's Complaint.

Defendants did not argue, in the alternative, that the Arresting Officers are entitled to qualified immunity because "arguable probable cause"[6] existed for the arrest. The Court will not make that argument for them, or belatedly allow them to amend their motion to make it. The issue of arguable probable cause in connection with the actions of the Arresting Officers may well need

---

[6] An officer who makes an arrest that is lacking in probable cause is nonetheless entitled to qualified immunity if officers of reasonable competence in the same circumstances and with the same knowledge could disagree whether probable cause existed; such a mistaken, but objectively reasonable belief is referred to as "arguable probable cause." *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007) (there is "arguable probable cause" at the time of arrest if officers of reasonable competence could disagree on whether the probable cause test is met).

to be addressed later in the case, after the facts are developed.  But there is no reason to address it today.

### B. Sergeant Kelly's Motion to Dismiss is Denied.

Defendants also move to dismiss Plaintiff's 1983 false arrest claim specifically as against Sergeant Kelly, arguing first that Plaintiff does not allege that Sergeant Kelly actually arrested him.  The Complaint mentions Sergeant Kelly only once, and only in so stating that Plaintiff's "arrest was approved by Sergeant James Kelly." Compl. ¶ 18.  Defendants urge that Plaintiff failed to allege that Sergeant Kelly intended to confine Plaintiff – intent to confine being an element of false arrest under New York law. Mot. at 6 (quoting *Singer v. Fulton County Sheriff*, 63 F. 3d 110, 118 (2d Cir. 1995)). Defendants also argue that Sergeant Kelly had no personal involvement in the arrest and was not directly involved in any alleged constitutional violation, and that, "Allegations that [a defendant] merely participated in Plaintiff's arrest are not sufficient." *Id.* (quoting *Cooper v. City of N.Y.*, 17-CV-1517 (NGG) (RLM), 2019 U.S. Dist. LEXIS 131572, at *20-21 (E.D.N.Y. Aug. 5, 2019)).

Plaintiff counters that an officer is personally involved in an arrest when he intentionally participates in it, regardless of whether that participation is direct or indirect. Opp. at 3.  Plaintiff is correct.

The Complaint alleges that Sergeant Kelly "approved" Plaintiff's arrest. Compl. ¶ 18.  If, prior to actually arresting Plaintiff, the Arresting Officers sought guidance from a superior officer, who told them to go ahead, that would constitute personal involvement.  *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988).  Allegations that Sergeant Kelly "merely participated" in Plaintiff's arrest are, in fact,  sufficient to state a claim, because participation in some form is all that is required for liability to attach, and facts are alleged that, if proven, tend to prove his participation.

Defendants quote *Cooper v. City of New York* out of context to support their argument that "mere participation" is insufficient; that quote pertains to pleading a malicious prosecution claim, not a false arrest claim.  The full quote from that case is:

> Accordingly, to state a *malicious prosecution* claim against any individual officer here, Plaintiff must allege that that officer engaged in such conduct. Allegations that he merely participated in Plaintiff's arrest are not sufficient.

*Cooper v. City of N.Y.*, 2019 U.S. Dist. LEXIS 131572, at \*20-21 (quoting *Myers v. Moore*, 326 F.R.D. 50, 60 (S.D.N.Y. 2018)) (emphasis added). The case is not apposite and should not have been cited by Defendants for the proposition that Sergeant Kelly could not be held liable for false arrest; *Cooper* holds than an arresting officer cannot for that reason be held to have participated in a malicious prosecution, which is something entirely different.

That Sergeant Kelly approved Plaintiff's arrest but was not present at the scene to physically execute Plaintiff's arrest does not negate his participation in the arrest or that he intended to cause Plaintiff to be confined. Plaintiff can establish intentional confinement by showing that Sergeant Kelly "affirmatively procured or instigated [Plaintiff's] arrest" by another. *King v. Crossland Sav. Bank*, 111 F.3d 251, 255 (2d Cir.1997).  So Defendants are incorrect in their argument that Sergeant Kelly cannot be held liable because he did not physically participate in arresting Plaintiff.

And Defendants' assertion that Sergeant Kelly did not intend to confine Plaintiff is directly contradicted by the allegation in the Complaint that Sergeant Kelly was the one who signed off on Plaintiff's arrest.  Compl. ¶ 18.  Plaintiff's allegations are sufficient to support an inference that Sergeant Kelly actively participated in his arrest with an intent to confine Plaintiff, because a supervising officer who authorizes officers on the scene to make an arrest is indicating that he believes there is probable cause to make the arrest and he intends to cause the plaintiff's confinement.  *Harris v. City of New York*, No. 15-CV-8456 (CM), 2017 WL 6501912, at \*4

18

(S.D.N.Y. Dec. 15, 2017) (holding that a police sergeant could be held liable for false arrest because he "participated in the arrest by 'verifying' it," which is "part of the arrest process"); *see also Alicea v. City of New York*, 2016 WL 2343862, at *4, 6 (S.D.N.Y. May 3, 2016) (supervising officer who verified an arrest could be held liable for false arrest).

Plaintiff argues that, even when an officer does not *actively* participate in an arrest, he may nonetheless be liable under § 1983 for his failure to intervene; all "law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officials in their presence." *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014). An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer has reason to know that any constitutional violation has been committed by another officer. *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994).

But I need not find that Plaintiff has pleaded a viable failure to intervene claim (a claim that is most certainly not apparent  from the facts pleaded in the Complaint) in order to deny the motion to dismiss.

Sergeant Kelly argues in the alternative that he is entitled to dismissal from Plaintiff's 1983 false arrest claim on the ground of qualified immunity. Mot. at 6.

Without knowing more about the facts, I have to disagree.

In *Mckenna v. Wright*, 386 F. 3d 432, 436 (2d Cir. 2004), the Second Circuit held that there is no reason why a "qualified immunity defense may not be asserted on a Rule 12(b)(6) motion as long as the defense is based on facts appearing on the face of the complaint." At the same time, the Court of Appeals emphasized that, "Of course, a defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route." *Id.* at 436. What that means is that the facts

supporting a qualified immunity defense must appear on the face of a complaint, and such a motion may be granted only where "it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Id.* (quoting *Citibank, N.A. v. K–H Corp.*, 968 F.2d 1489, 1494 (2d Cir.1992)). At this stage, Plaintiff "is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *Id.*

Plaintiff indeed urges that the Complaint "does not allege that Kelly had information that would entitle him to qualified immunity." Opp. at 4.

He is again correct.

Neither the text of the pleading nor any document attached thereto demonstrates that Sergeant Kelly had arguable probable cause to approve Plaintiff's arrest. *Barnett v. Mount Vernon Police Dep't*, 523 F. App'x 811, 813 (2d Cir. 2013). Arguable probable cause exists if it was objectively reasonable for Sergeant Kelly to believe that probable cause existed or if officers of reasonable competence could disagree on whether probable cause existed. *Jenkins*, 478 F.3d at 87. To decide whether an officer's conduct was objectively reasonable, "we look to the information possessed by the officer at the time of the arrest, but we do not consider the subjective intent, motives, or beliefs of the officer." *Amore v. Novarro*, 624 F.3d 522, 536 (2d Cir.2010) (internal quotation omitted).

Unfortunately for Sergeant Kelly, I have no idea what information Sergeant Kelly possessed when he approved Plaintiff's arrest. The Complaint does not plead anything other than that he approved Vett's arrest. Compl. ¶ 18. Sergeant Kelly was apparently not in the prop room when the arrest was made, and the Complaint does not plead anything about what the officers who were on the scene (the Arresting Officers) told Sergeant Kelly in order to get him to sign off on

the arrest. Until the Arresting Officers and the Sergeant are deposed, the Court cannot possibly assess whether officers of reasonable competence in Sergeant Kelly's position could disagree on whether probable cause existed.

While "qualified immunity should be resolved at the earliest possible stage in litigation . . . . there is an obvious, if rarely expressed, corollary to that principle: The immunity question cannot be resolved before the earliest possible stage, *i.e.*, prior to ascertainment of the truth of the plausible factual allegations on which a finding of qualified immunity is premised." *Chamberlain Est. of Chamberlain v. City of White Plains*, 960 F.3d 100, 110 (2d Cir. 2020) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Otherwise, plaintiffs like Vett who endeavor to obtain relief from a violation of their constitutional rights would face a heightened pleading standard under which they must plead not only facts sufficient to make out their claim but also additional facts to defeat an assertion of qualified immunity. *Id.* at 110.

It very may well be that Sergeant Kelly will ultimately be entitled to qualified immunity. But that possibility is not a valid basis for granting a motion to dismiss. *Chamberlain v. City of White Plains*, 960 F.3d at 112.

Accordingly, Defendants' motion to dismiss Plaintiff's Section 1983 claim for false arrest as to Sergeant Kelly is denied.

**CONCLUSION**

For the reasons discussed above, the following counts (and sub-counts) are DISMISSED:

- Defendant NYPD is dismissed with prejudice from all counts.
- Count 2 is dismissed as to Defendants Officer Tejada, Officer Mauceli, Sergeant Kelly, and John Does 1-5 with prejudice.
- Count 3 is dismissed with prejudice.

- Count 4:
    - Count 4 in its entirety is dismissed as against the City as duplicative of Count 5.
    - 4(i) Malicious Prosecution is dismissed without prejudice as to Officer Tejada, Officer Mauceli, and Sergeant Kelly.
    - 4(ii) False Arrest is dismissed with prejudice as to Detective Schick.
    - 4(iii) Evidence Manufacturing is dismissed without prejudice as to Officer Tejada, Officer Mauceli, and Sergeant Kelly.
- Count 5 is dismissed without prejudice.
- Count 6 is dismissed with prejudice.

Plaintiff has twenty-one days from the date of this decision and order to file an amended complaint; otherwise, the various without prejudice dismissals will be converted to with prejudice dismissals. Defendants should file answers to the Complaint; the parties must submit a Case Management Order proposal by February 3, 2022, or the Court will order them in for a Rule 16 Conference.

This constitutes the decision and order of the Court. It is a written opinion. The Clerk of Court is respectfully directed to terminate the motion at Docket No. 21.

Dated: January 5, 2022

_____
U.S.D.J.

BY ECF TO ALL COUNSEL

22