

THE CITY OF NEW YORK

# LAW DEPARTMENT

**HON. SYLVIA O. HINDS-RADIX**
*Corporation Counsel*

100 CHURCH STREET
NEW YORK, NY 10007

**KATHERINE J. WEALL**
phone: 212-356-5055
mobile:646-370-0051
email: kweall@law.nyc.gov

February 6, 2023

**VIA ECF**
Honorable Sarah Netburn
United States Magistrate Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

     Re: <u>Ilya Vett v. City of New York et al</u>.
       20-cv-2945 (CM)

Your Honor:

   I am the Senior Counsel assigned to represent defendants in the above-captioned action. Defendants write in response to the Court's Order of January 25, 2023 to submit this letter brief regarding the status of several outstanding discovery issues in this case.

   In this action, plaintiff alleges claims arising out of his arrest on September 21, 2018. Plaintiff was arrested for printing a 3-D gun, or a "ghost gun" at his place of work. On January 5, 2022, the Hon. Colleen McMahon partially granted defendants' motion to dismiss, resulting, <u>inter alia</u>, in the dismissal of the City of New York and the New York City Police Department from this case.

   The parties met and conferred on December 21, 2022, and on January 9, 2023, defendants served written objections to plaintiff's latest discovery requests and notice pursuant to Federal Rule of Civil Procedure ("FRCP") 30(b)(6). Plaintiff thereafter requested a discovery conference.  Defendants write to apprise the Court of their position on the following discovery issues, which remain in dispute.

## A.  Plaintiff's Request for a 30(b)(6) Deposition From the Non-Party City of New York

   On November 28, 2022, plaintiff served the non-party City of New York with a notice of deposition[1] pursuant to FRCP 30(b)(6), compelling testimony from the City on New York City

---

[1] Because the City is a non-party, serving a notice of deposition was improper.

Police Department's ("NYPD's") "methods, practices, customs and procedures, during the years 2010 to the present, concerning 1. The investigation and training in the recognition of firearms [and] 2. The investigation and training for the recognition of imitation weapons including firearms," and "methods, practices, customs, and procedures, during the years 2010 to the present, concerning 1. The promotion of arrests to the media [and] 2. The provision of arrest evidence to the media."

As a general matter,[2] plaintiff's Rule 30(b)(6) notice seeks testimony that is well beyond the scope of the existing false arrest and malicious prosecution claims against the individual defendants in this matter, where the relevant inquiry is essentially, was there probable cause to arrest and prosecute plaintiff.  But plaintiff's proposed 30(b)(6) notice seeks discovery into customs, practices, and procedures of the NYPD. Both the NYPD and the City of New York were dismissed from this action, making any request for Monell discovery in this case irrelevant, moot, and disproportional to the needs of the case.  Plaintiff has not, and cannot, explain why the practices, customs, and procedures of the NYPD are relevant to the claims against the individual defendants.  To the extent testimony about the recognition of imitation firearms (as opposed to the policies and practices regarding the same) is relevant, plaintiff cannot explain why this testimony cannot be obtained from the officers themselves, without necessitating this extraneous deposition from a non-party.

The NYPD's policies and procedures are all the more irrelevant because, as defendants have made apparent, they do not contest that plaintiff was arrested before the 3D printed gun could be fully printed, and therefore there is no question that the gun was not operable at the time of plaintiff's arrest. Defendants have produced a firearms report that states that the 3-D printed gun was not operable. Because the gun was inoperable and no party is arguing otherwise, the officers' training into the recognition of firearms and imitation firearms is all the more irrelevant.

As to the request for 30(b)(6) testimony regarding the promotion of arrests to the media and the provision of arrest evidence to the media, this is also irrelevant because there is no evidence in the record, nor has plaintiff established, that any individual defendant promoted plaintiff's arrest or provided arrest evidence to the media. Even if subsequent testimony reveals that some defendant did forward this information to the media, certainly the NYPD's policies on forwarding such information have no relevance to plaintiff's claimed damages in this case.

The notice is also problematic for a myriad of other reasons.  It seeks testimony on topics "which include" the topics listed above (emphasis added.) The use of this language in and of itself turns the notice "into an overbroad notice, in contradiction to the 'reasonable particularity' required by Rule 30(b)(6)." Innomed Labs, LLC v. Alza Corp., 211 F.R.D. 237, 240 (S.D.N.Y. 2002).  Plaintiff's Rule 30(b)(6) notice is intended to allow plaintiff to ask questions without limits, and is a clear violation of Rule 30(b)(6).  Moreover, the notice seeks testimony regarding "methods, practices, customs, and procedures" dating from 2010 onwards, nearly thirteen years

---

[2] Should this matter not be resolved, defendants reserve their right to file a motion for a protective order.

ago and nearly a <u>decade</u> before plaintiff's arrest took place.  This is obviously disproportionate to the needs of the case, the amount in controversy and the importance of the discovery in resolving the issues in the case.  Moreover, the 30(b)(6) notice is duplicative of other discovery taken or to be taken in the case, and/or there are or were more convenient ways to obtain said discovery than from this nonparty.  <u>See</u> FRCP 26(b).  Here, the defendants can testify about the basis for their conclusion that the 3-D printed gun was unlawful, for example, or about their training on this topic.  Plaintiff is not entitled to an overly broad and unduly burdensome deposition from a non-party that is unrelated to any existing claim in this case to obtain this information.

Pursuant to FRCP 26(c)(1), courts have discretion to limit discovery where necessary to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense." As with other forms of discovery, a court may limit the scope of a Rule 30(b)(6) deposition notice based on that Rule. <u>See</u>, <u>e.g.</u> <u>DDK Hotels, LLC v. Williams-Sonoma, Inc.</u>, 19 CV 226 (ILG)(CLP), 2022 U.S. Dist. LEXIS 126008, at *5 (E.D.N.Y. Feb. 11, 2022) (internal citation omitted). In reviewing such notices, courts consider whether the topics are "proportional to the needs of the case, not unduly burdensome or duplicative, and described with 'reasonable particularity.'" <u>DDK Hotels</u>, 2022 U.S. Dist. LEXIS 126008, at *5.  Courts should also consider whether the proposed topics seek information that is available from other sources or strays beyond the issues presented in the case. <u>See</u>, <u>e.g.</u> <u>Recycled Paper Greetings v. Davis</u>, CASE NO.: 1:08-MC-13, 2008 U.S. Dist. LEXIS 10649, at *8-10 (N.D. Ohio Feb. 13, 2008).  The Court should find all this to be the case here.

Should the Court allow the deposition(s) to proceed as noticed on these irrelevant topics, it would not be proportional to the needs of this case and would impose an undue burden on the City and would unnecessarily prolong this litigation. For the above reasons, defendants will seek to move for a protective order regarding plaintiff's 30(b)(6) notice.

## B. Plaintiff's Request for the Deposition of Non-Party Robert Von Werne and Request for his C.V.

Plaintiff seeks to depose non-party retired Detective Robert Von Werne, who performed and signed off on the laboratory analysis of the 3-D printed gun that concluded that it was not an operable firearm. Importantly, no defendant claims the gun was operable and the operability of this gun is not in dispute in this case.  Von Werne's deposition is irrelevant, unnecessarily cumulative, and is not proportional to the needs of the case, given the existence of the firearms report. "A court must limit discovery where 'the discovery sought is unreasonably cumulative' or 'can be obtained from some source that is more convenient, less burdensome, or less expensive.'" <u>Dass v. City Univ. of N.Y.</u>, 18-CV-11325 (VSB)(OTW), 2022 U.S. Dist. LEXIS 202699, at *6-7 (Nov. 7, 2022) (citing Fed. R. Civ. P. 26(b)(2)(C)(i) and (iii)).

Plaintiff also requests that Von Werne produce a curriculum vitae, or "C.V." as well as "all" documents "concerning" the C.V. Von Werne's C.V. – to the extent that he even has one – is irrelevant and not proportional to the needs of this case, given that Von Werne is not an expert witness and moreover, that no party (including plaintiff) contests Von Werne's report. The request is also overbroad in that it asks for "all" documents "concerning" the C.V.

**C.  Plaintiff's Requests for Defendants' Training Records, Including Firearms Training**

Plaintiff requests all of the defendants' training records, without limitation, and including their firearms training.  No Monell claims remain in the case, and evidence regarding training is therefore irrelevant. Furthermore, this request is vastly overbroad; it would be impossible to collect "all" such training documents, on any topic without limitation.

Defendants have indicated to plaintiff that they are willing to search for documents pertaining to the individual defendants' training on the identification of "ghost guns" and produce that information, if any exists, to plaintiff.   Beyond that, as to plaintiff's request for the officers' firearms training generally, this is irrelevant and cumulative.  The defendants in this case can testify as to the reasons they arrested plaintiff, which would include testimony about the reasons the partially printed gun was unlawful.  Plaintiff can produce evidence as he sees fit to dispute this. It is therefore entirely unclear what relevance defendants' training, in firearms in particular, would have. Even if such training were relevant, however, a far less burdensome way for plaintiff to obtain this information would be by questioning the individual defendants at deposition, and this discovery must be limited on this ground alone. Dass, 2022 U.S. Dist. LEXIS 202699, at *6-7 (Nov. 7, 2022).

**D.  Plaintiff's Belated Production of Expert Disclosures Without Leave of Court**

Plaintiff's expert reports in this case were due on January 13, 2023. No disclosures pursuant to Fed. R. Civ. P. 26(a)(2) were served by that date. On January 18, 2023, plaintiff untimely disclosed to defendants the name and C.V. of the expert whom he intended to call.  His untimely and incomplete disclosure did not comply with FRCP 26(a)(2) in that it did not include a report from the expert.

Defendants object to any untimely expert disclosure in this case, and defendants will seek to preclude plaintiff from offering an expert witness as a result. This late disclosure is not harmless to defendants, who will not now have an opportunity to rebut this expert's opinion – which is to date, unknown – prior to the close of discovery.  Fleet Capital Corp. v. Yamaha Motor Corp., U.S.A., 01 Civ. 1047 (AJP), 2002 U.S. Dist. LEXIS 17502, at *9 (S.D.N.Y. Sept. 19, 2002)(citing 6 Moore's Federal Practice § 26.27[2][d] at p. 26-92).  Moreover, plaintiff has failed to show good cause, or any reason whatsoever for that matter, as to why these disclosures were not timely made, or why an extension was not sought.

Preclusion would not be too harsh a remedy, as expert opinion as to the operability of the gun is not crucial to plaintiff's case. Fleet Capital Corp., 2002 U.S. Dist. LEXIS 17502 at *9. Defendants do not dispute that the gun in this case was not operational, and plaintiff is in possession of the firearms report that so states. Thus, it is unclear what purpose the expert's report would serve.

**E.  Plaintiff's Request for Information Regarding a Phone Call from a Complaining Witness**

Plaintiff has requested production of information regarding the phone call that resulted in the dispatching of police officers to plaintiff's workplace on the date of plaintiff's arrest. Defendant James Taylor testified that the security officer from the Disney Corporation

(plaintiff's place of employment) called a contact of his at the NYPD to report plaintiff's actions. Therefore, because there was no 911 call, there is no audio or record as there would have been from a 911 dispatch.

Defendants have informed plaintiff, in their discovery responses, that the Disney security officer would be the person with knowledge regarding this phone call. The recipient of the call at NYPD would otherwise be impossible to identify. It is unknown who the Disney security officer called, or, indeed, even where this person was assigned. Without that information, it is impossible to ascertain whether a log would have been made of that call, which seems unlikely. Unlike 911 calls, private calls to an NYPD precinct are not routinely logged. Discovering the details of that record would be the very definition of "unduly burdensome." Furthermore, it is imperative to note that there is absolutely no dispute as to why this call was made.  Nor do defendants argue that there was probable cause for plaintiff's arrest <u>because</u> the security officer called the police.  Thus, this information is not even remotely relevant to any issue in this case.

### F.  Plaintiff's Request for the Identities of "All" Persons who have Knowledge of Communications with the Media

Plaintiff has asked defendants to identify "any and all persons who have knowledge of communications with the media regarding the Incident." Again, this request is vastly overbroad and impossible to comply with. Plaintiff is free to question the defendant officers as to whether any of them informed the media of plaintiff's arrest or provided any information to the media. There is no evidence in the record that any of them did. Furthermore, it is once again unclear how this information is relevant.

### G.  Destruction of the 3D Printed Gun

Photographs of the printed gun have been produced in this case.  On January 12, 2023, while in the process of setting up an inspection of the printed gun, this Office learned that the gun had accidentally been destroyed by the NYPD.  Defendants immediately informed plaintiff of this development.

The destruction of this evidence occurred notwithstanding that this Office timely served a preservation notice for the 3-D printed gun in this case, on October 13, 2020. <u>See</u> Exhibit A. NYPD acknowledged receipt of that preservation notice on that same date. <u>See</u> Exhibit B. (In addition, there was a civil action hold on the gun, placed by plaintiff on February 12, 2020, before this case was brought).

Defendants will respond to any motion brought by plaintiff regarding this issue as appropriate but wish to apprise the Court of this issue at this time to the extent it may be relevant to other discovery issues in this case.

Defendants thank the Court for its consideration herein.

Respectfully submitted,

/s/ *Katherine J. Weall*

_____

Katherine J. Weall
Senior Counsel

c.c.    Henry Bell, Esq. and Andrew Stengel, Esq. (VIA ECF),
        *Counsel for Plaintiff*